David W. Fassett (DWF 1636)
Gregory D. Jones (GDJ 5065)
ARSENEAULT & FASSETT, LLP
560 Main Street
Chatham, NJ 07928
(973) 635-3366
(973) 635-0855 FAX
fassett@af-lawfirm.com
jones@af-lawfirm.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
TRENTON VICINAGE

|  |  |  |
|---|---|---|
| ADAM WAY, | : | Civil Action No. |
| Plaintiff, | : |  |
| v. | : |  |
| ARETE AUTOMOBILI CORPORATION and VITALY FARGESEN, | : | **COMPLAINT AND JURY DEMAND** |
| Defendants. | : |  |

Plaintiff Adam Way ("Plaintiff"), through the undersigned counsel, by way of Complaint

against Defendants Arete Automobili Corporation ("Arete") and Vitaly Fargesen ("Fargesen")

(collectively, "Defendants"), states and alleges as follows:

ESSENCE OF THE DISPUTE

1.    Plaintiff agreed to purchase a custom-built Land Rover Defender through an online

auction house, nonparty Second Daily, LLC ("SD"), for $92,458.75.  Plaintiff paid $75,000

upfront to SD, which retained $30,250 and paid $44,750 to the seller of the Land Rover, nonparty

Allvette, LLC ("Allvette"), which in turn retained $2,250 and paid $42,500 to Defendants, the

custom-builder of the Land Rover.  After repeated delays and broken promises by Defendants,

Plaintiff never received the custom-built Land Rover, and the parties canceled the agreement.

Defendants' failure to deliver the customized Land Rover compelled Plaintiff to purchase a similar vehicle from another seller for over $75,000 more than the agreed-to purchase price of $92,458.75. Moreover, even though SD returned to Plaintiff the $30,250 SD held, and Allvette returned to Plaintiff the $2,250 Allvette held, Defendants initially agreed but ultimately refused to return to Plaintiff the $42,500 Defendants held and continue to hold.  Defendants' wrongful retention of Plaintiff's $42,500 compelled Plaintiff to finance his purchase of the replacement vehicle and to incur interest and finance charges he would not have incurred.  Finally, to justify their improper retention of Plaintiff's $42,500, Defendants made a series of fraudulent misrepresentations and omissions to Plaintiff, including falsely claiming that Defendants would complete work on, and deliver to Plaintiff, the Land Rover when, in truth, Defendants had previously sold the Land Rover to a third party and concealed that sale from Plaintiff.  Defendants' wrongful conduct has deprived Plaintiff of his funds, caused him to suffer significant damages, and compelled him to incur substantial legal fees and costs.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest or costs, and is between citizens of different States.

3.     Venue in this District is proper under 28 U.S.C. § 1391 because Defendants reside in this District.

## PARTIES

4.     Plaintiff is a Colorado resident with an address of 251 Harrison Street, Denver, Colorado, 80206.

5. Upon information and belief, Arete is a New Jersey corporation with its principal place of business located at 503 Hawthorne Place, Morganville, Monmouth County, New Jersey 07751.

6. Upon information and belief, Fargesen is a New Jersey resident with an address of 503 Hawthorne Place, Morganville, Monmouth County, New Jersey 07751.

7. Upon information and belief, Fargesen is the sole principal, operator, and registered agent of Arete.

8. Upon information and belief, Arete is, in fact and in law, Fargesen's alter ego, and Fargesen's sole operation and control of Arete is an abuse of the corporate form to advance his personal interests.

## ALLEGATIONS COMMON TO ALL COUNTS

9. Upon information and belief, Defendants are engaged in the business of acquiring used vehicles in Eastern Europe and refurbishing and reselling the vehicles to customers in the United States. Defendants' business includes constructing custom-built vehicles for sale in the United States.

10. Upon information and belief, Defendants never actually take title to the vehicles they acquire in Eastern Europe, and instead arrange for other individuals or entities to assume title to those vehicles in order to sell them to buyers, for which the title holders receive a small percentage of the sale price.

11. Upon information and belief, Defendants' business practice enables Defendants to avoid owning in their names the vehicles they acquire while still receiving a substantial percentage of the sales proceeds, which pass through Arete to Fargesen, as its sole principal, or go directly to Fargesen.

12.     Upon information and belief, SD is an online auction house engaged in the business of auctioning "cool, classic, collectible, enthusiast, [and] niche" motor vehicles.

13.     Upon information and belief, Allvette is a Florida limited liability company engaged in the business of purchasing and selling vehicles to the public at large.

14.     Upon information and belief, Defendants and Allvette had a business relationship in which Allvette would take title to vehicles acquired by Defendants and arrange for their sales to customers, occasionally through auction houses like SD.

15.     Upon information and belief, Defendants acquired a certain Land Rover Defender (the "LRD").

16.     Upon information and belief, Defendants and/or Allvette arranged to auction the LRD on or through SD's auction platform.

17.     On or around January 11, 2018, Plaintiff purchased the LRD at auction through SD.

18.     As part of his purchase of the LRD, Plaintiff had the option of customizing the LRD.

19.     Including all the customizations Plaintiff chose, the final purchase price of the LRD was $92,458.75.

20.     Upon information and belief, Defendants were responsible for building and/or customizing the LRD per Plaintiff's custom design specifications and delivering the completed LRD to Plaintiff.

21.     At or around the time of the purchase, Defendants assured Plaintiff that the custom LRD would be completed and delivered within, at most, ten (10) to fourteen (14) weeks.

22.     Plaintiff decided to purchase the LRD in reliance on Defendants' representations regarding the date of delivery.

23. After working through the custom design specifications with Defendants, Plaintiff reached a written agreement with SD to purchase the LRD for $92,458.75.

24. Under the terms of the agreement, Plaintiff agreed to pay 50% of the purchase price of the LRD up front to SD; SD would then transfer that money to Allvette as the seller of the LRD; and Allvete would transfer the majority of that money to Defendants as the custom builders of the LRD. The remaining 50% of the purchase price would not be due from Plaintiff until the LRD was completed and ready for delivery.

25. In early February 2018, Plaintiff wired $75,000 to SD, substantially more than the 50% of the $92,458.75 required by the agreement.

26. Upon information and belief, SD wired $44,750 of that $75,000 to Allvette shortly thereafter and retained $30,250.

27. Upon information and belief, Allvette wired $42,500 of that $44,750 to Defendants in or about March 2018 and retained $2,250.

28. On or around March 29, 2018, SD emailed Plaintiff to introduce him to nonparty Juliano DeCerchio, identified DeCerchio as a representative of Allvette, and directed Plaintiff to correspond with DeCerchio going forward about the completion and delivery of the custom LRD.

29. Over the next several months, Plaintiff repeatedly requested updates from DeCerchio regarding the status of the LRD.

30. DeCerchio repeatedly responded to Plaintiff's requests with excuses for the delays and promises of new future dates of completion and delivery.

31. On or around June 16, 2018, nearly two months after the outside date by which Defendants had originally promised to deliver the LRD to Plaintiff, DeCerchio contacted Plaintiff

and, owing to the delays, advised Plaintiff to have SD wire back to Plaintiff the $30,250 being held by SD.

32.    During that same correspondence, DeCerchio advised Plaintiff that they can "worry about the remaining balance" after the "buildout is finished and titled."

33.    In or around early July 2018, and in reliance upon DeCerchio's representation, Plaintiff requested that SD return to Plaintiff the $30,250 SD continued to hold from Plaintiff's initial $75,000 payment.

34.    SD complied with Plaintiff's request and returned to Plaintiff the $30,250 SD continued to hold.

35.    By August 2018, Plaintiff had still not received the LRD, which, at that point, was approximately four months' past the agreed-upon delivery date.  Plaintiff also had not received any meaningful update on the LRD's status.

36.    Given the repeated delays and excuses, Plaintiff decided to cancel the purchase of the LRD, recoup his remaining $44,750 from Allvete ($2,250) and Defendants ($42,500), and pursue the purchase of a different, but substantially identical, Land Rover Defender from another source.

37.    Before pursuing a different Land Rover Defender, Plaintiff advised Defendants and Allvete that he planned to buy such a car elsewhere and, accordingly, requested the return of his $42,500 that Defendants continued to hold and his $2,250 that Allvete continued to hold.

38.    In response, Defendants and Allvete agreed to terminate the contract for the custom LRD and to return to Plaintiff his $42,500 and $2,250, respectively.

6

39.     In reliance on Defendants' and Allvete's agreement to return Plaintiff's $42,500 and $2,250, respectively, Plaintiff began to pursue the purchase of a similar or identical Land Rover Defender from other sources.

40.     Due to the rarity of that specific model, Plaintiff was unable to locate an available, substantially identical replacement for less than $170,000.

41.     On or about September 7, 2018, and in reliance on Defendants' and Allvete's representations that they would return Plaintiff's money, Plaintiff agreed to purchase a replacement Land Rover Defender (the "Replacement LRD") for approximately $170,000, i.e., over $75,000 more than the $92,458.75 Plaintiff agreed to pay for the LRD.

42.     Despite Defendants' and Allvete's repeated assurances that they would return Plaintiff's money, and despite Plaintiff's repeated demands for same, Defendants and Allvete failed to return Plaintiff's money.

43.     As a result of Defendants' and Allvete's failure to return Plaintiff's money, Plaintiff was forced to finance the Replacement LRD, resulting in interest and finance charges that Plaintiff would not have incurred had Defendants and Allvete returned Plaintiff's money as promised.

44.     After Plaintiff's purchase of the Replacement LRD, Defendants continued to direct correspondence to Plaintiff which falsely promised that Defendants would return Plaintiff's money.

45.     As a result of Defendants' and Allvete's repeated failures and broken promises to return Plaintiff's money, Plaintiff retained counsel in his home state of Colorado ("Colorado Counsel").

46.     On or around October 26, 2018, after Plaintiff retained Colorado Counsel, Allvette finally returned to Plaintiff the $2,250 Allvete continued to hold.

7

47.     Defendants, however, continued to refuse to return to Plaintiff the remaining $42,500 of Plaintiff's money Defendants continued to hold.

48.     Through the efforts of Colorado Counsel, Plaintiff learned that Defendants were withholding and using his $42,500 as leverage in an unrelated dispute between Defendants and Allvette involving the sale of another vehicle in which Plaintiff was not involved.

49.     On or about November 19, 2018, Plaintiff, through Colorado Counsel, sent a letter to Allvette and Defendants demanding the return of Plaintiff's $42,500 by close of business on November 26, 2018, and threatening legal action if the monies were not returned by that date.

50.     On or about November 20, 2018, Allvette, through its representative, advised Plaintiff that Allvete had already returned $2,250 to Plaintiff and had wired the remaining $42,500 to Defendants in or around March 2018, and, as a result, that Allvette no longer possessed any of Plaintiff's money.

51.     On or about that same day, and nearly three months after Plaintiff and Defendants had terminated the agreement to purchase the Land Rover in exchange for Defendants returning Plaintiff's $42,500, and nearly two months after Defendants learned that Plaintiff had purchased the Replacement LRD, Defendants nevertheless proposed to complete and deliver the LRD if Plaintiff would pay Defendants another $42,500 before delivery.

52.     On or about November 30, 2018, Plaintiff, through Colorado Counsel, rejected Defendants' proposal to complete the custom LRD upon Plaintiff's payment of another $42,500, reiterated Plaintiff's demand for the immediate return of his $42,500 from Defendants, and threatened legal action if Defendants failed to do so.

53.     Defendants never responded to Plaintiff's November 30, 2018 demand.

8

54.    On or about May 15, 2019, Plaintiff discovered that Defendants had in fact sold the LRD to a dealership in Massachusetts in or around July 2018—approximately four months *before* Defendants and Plaintiff agreed to terminate Plaintiff's purchase of the LRD.

55.    Accordingly, Defendants' subsequent proposal to complete the custom LRD upon Plaintiff's delivery of an *additional* $42,500 was fraudulent, as Defendants no longer owned or possessed the LRD they proposed to complete and deliver to Plaintiff.

56.    Upon learning this information, Plaintiff's Colorado Counsel contacted the Massachusetts dealership, which confirmed that it had purchased the LRD from Defendants in July 2018. The dealership further advised that it was unaware of Defendants' prior agreement to sell the LRD to Plaintiff, or that the LRD was otherwise subject to a dispute between Plaintiff and Defendants.

57.    On or about May 29, 2019, Plaintiff, through Colorado Counsel, sent yet another letter to Defendants demanding the return of Plaintiff's $42,500 by close of business on June 5, 2019.

58.    Defendants again failed and refused to return Plaintiff's $42,500.

59.    Thereafter, Plaintiff, through Colorado Counsel, filed a complaint against Arete in Colorado State Court under Docket No. 2019CV32281 (the "Colorado Action").

60.    After being served with process in New Jersey, Arete defaulted in the Colorado Action.

61.    On or about September 26, 2019, a default judgment was entered against Arete in the Colorado Action in the amount of $137,491.32, representing the $42,500 of Plaintiff's money that Arete refused to return, trebled in accordance with Colorado law, plus interest, costs and attorneys' fees.

9

62.    In efforts to enforce and collect on the default judgment, Colorado Counsel communicated with Fargesen, as Arete's sole principal, in or about November 2019.

63.    During these communications, Fargesen advised that Arete had no assets and threatened that, if Plaintiff or Colorado Counsel continued to attempt to enforce and collect on the default judgment, Fargesen—as Arete—would simply cause Arete to file for bankruptcy.

64.    Following these communications, Colorado Counsel reviewed Arete's filings with the State of New Jersey.  These filings revealed that Fargesen is Arete's sole principal and registered agent, and that Arete had ceased filing its annual reports with the State for two prior years, resulting in the revocation of Arete's corporate status since approximately November 2018.

65.    On or about January 15, 2020, Plaintiff moved the Colorado Court to amend the default judgment to include Fargesen, as Arete's alter ego, as a second judgment-debtor based upon Fargesen's sole representation of Arete throughout Plaintiff's dealings with Defendants in connection with the LRD, Fargesen's representations to Colorado Counsel about Arete's lack of assets, Fargesen's threat to cause Arete to declare bankruptcy, Fargesen's status as Arete's sole principal and registered agent, and the revocation of Arete's corporate status.

66.    On January 16, 2020, the Colorado Court granted Plaintiff's motion and issued an amended judgment in the Colorado Action naming both Defendants as judgment-debtors, jointly and severally, in the amount of $137,491.32, again representing the $42,500 of Plaintiff's money that Defendants refused to return, trebled in accordance with Colorado law, plus interest, costs and attorneys' fees.

67.    On March 4, 2020, Plaintiff docketed the amended judgment from the Colorado Action in New Jersey under Judgment Number DJ-043354-20.

10

68.    After Plaintiff's docketing of the amended judgment in New Jersey, Defendants belatedly moved the Colorado Court to vacate the amended judgment and to dismiss the Colorado Action for lack of personal jurisdiction over Defendants in Colorado.

69.    On August 10, 2020, the Colorado Court granted Defendants' motion, vacated the amended judgment, and dismissed the Colorado Action for lack of personal jurisdiction over Defendants in Colorado, without prejudice to Plaintiff's right to sue Defendants in New Jersey.

70.    On September 30, 2020, Plaintiff filed a warrant to discharge the docketed judgment in New Jersey without prejudice to Plaintiff's rights and remedies against Defendants.

71.    To this date, Defendants refuse to return Plaintiff's $42,500, despite their having agreed to do so over two years ago, months after Defendants sold to the Massachusetts dealership the custom LRD for which Plaintiff paid that $42,500 in February 2018.

72.    Defendants' ongoing refusal to return Plaintiff's $42,500, as well as Defendants' repeated fraudulent misrepresentations and omissions on which Plaintiff detrimentally relied, have caused Plaintiff to incur substantial, additional damages, including without limitation costs and attorneys' fees.

COUNT ONE
(New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-19)

73.    Plaintiff incorporates by reference the allegations set forth in all the preceding Paragraphs as if set forth fully herein.

74.    Defendants acted unlawfully by, without limitation, making numerous material misrepresentations and omissions to Plaintiff, selling to another party the custom LRD Defendants had promised and agreed to deliver to Plaintiff without notifying Plaintiff of same, refusing to return Plaintiff's $42,500 in the face of Plaintiff's repeated demands and despite having already sold the LRD for which Plaintiff had paid, falsely promising to return Plaintiff's $42,500 with no

11

intention of doing so, withholding Plaintiff's monies as leverage in a separate dispute between Defendants and Allvette, and falsely proposing to complete Defendants' work on the LRD after they had already sold the LRD in order to induce Plaintiff to pay Defendants an additional $42,500.

75.    Plaintiff has suffered, and is continuing to suffer, ascertainable losses, including without limitation the $42,500 of Plaintiff's money that Defendants refuse to return, the interest and fees associated with Plaintiff's financing of the Replacement LRD, and costs and attorneys' fees.

76.    Plaintiff's ascertainable losses were directly and proximately caused by Defendants' unlawful conduct.

77.    Pursuant to N.J.S.A. § 56:8-19, Defendant are liable for three times the amount of actual damages sustained by Plaintiff plus interest, costs, and attorney fees.

<u>COUNT TWO</u>
(Colorado Civil Theft, C.R.S. § 18-4-405)

78.    Plaintiff incorporates by reference the allegations set forth in all the preceding Paragraphs as if fully set forth herein.

79.    Defendants continue to exercise control over the Plaintiff's $42,500, without authorization, and with the specific intent to permanently deprive Plaintiff of such funds.

80.    As a direct and foreseeable consequence of Defendants' civil theft, Plaintiff has suffered damages, all of which were suffered by Plaintiff in Colorado.

81.    Pursuant to C.R.S. § 18-4-405, Defendants are liable for three times the amount of actual damages sustained by Plaintiff plus interest, costs, and attorney fees.

## COUNT THREE
### (Conversion)

82.    Plaintiff incorporates by reference the allegations set forth in all the preceding Paragraphs as if set forth fully herein.

83.    Defendants have intentionally refused to return Plaintiff's $42,500 despite Plaintiff's repeated demands and Defendants' agreements to do so.

84.    Defendants' refusal to return Plaintiff's $42,500 is an unauthorized act of dominion or ownership over the property of Plaintiff.

85.    As a direct and proximate result of Defendants' conversion, Plaintiff has suffered, and is continuing to suffer, damages.

## COUNT FOUR
### (Fraud)

86.    On numerous occasions, Defendants represented to Plaintiff that Defendants would custom-build the LRD to Plaintiff's specifications and deliver same to Plaintiff.

87.    At the times Defendants made these various representations, Defendants knew or believed them to be false, as Defendants did not intend to custom-build the LRD and/or deliver same to Plaintiff.

88.    In fact, as they were representing to Plaintiff that they would still complete the LRD and deliver same, Defendants sold the LRD to another party and concealed that sale from Plaintiff.

89.    Thereafter, Defendants falsely agreed to terminate their agreement with Plaintiff and to return Plaintiff's $42,500 to induce Plaintiff to delay pursuing legal action against Defendants.

90.    Worse still, in the face of threatened legal action, and long after they had sold the LRD to another party, Defendants proposed to complete the work on the LRD if Plaintiff would pay an additional $42,500 to Defendants.

91.    Defendants intended that Plaintiff rely on their numerous material misrepresentations and omissions, first by causing Plaintiff to pay the initial $75,000 of which $42,500 was paid to Defendants, then by inducing Plaintiff to refrain from terminating the agreement while Defendants held that $42,500 well beyond the promised date of delivery, then by inducing Plaintiff to delay taking legal action, and then by soliciting another $42,500 from Plaintiff for promised services which Defendants knew they could not provide because they had previously sold the LRD.

92.    Plaintiff relied upon Defendants' material misrepresentations and omissions to his detriment by paying the initial $75,000 of which $42,500 was paid to Defendants, enduring Defendants' delays and fraudulent excuses well beyond the promised delivery date, and delaying taking legal action due to Defendants' fraudulent promises to return Plaintiff's $42,500.

93.    Plaintiff's reliance on Defendants' material misrepresentations and omissions was reasonable.

94.    As a direct and foreseeable consequence of Defendants' material misrepresentations and omissions, Plaintiff has suffered damages.

### COUNT FIVE
(Unjust Enrichment)

95.    Plaintiff incorporates by reference the allegations set forth in all the preceding Paragraphs as if set forth fully herein.

96.    Defendants wrongfully induced Plaintiff to pay $75,000, of which $42,500 was paid to Defendants.

14

97.    Plaintiff's payment of $42,500 conferred benefits upon Defendants.

98.    Through Plaintiff's wrongfully induced payment of $42,500, Defendants have been enriched.

99.    It is inequitable and unfair for Defendants to convert and retain Plaintiff's $42,500 which Plaintiff paid for the purchase of the LRD that Defendants promised but failed to deliver to Plaintiff and instead sold and delivered to another party without notifying Plaintiff.

100.    Defendants' sale of the LRD to another party, and their continuing failure and refusal to return Plaintiff's $42,500, have unjustly enriched Defendants and proximately caused Plaintiff to suffer, and continue to suffer, damages.

COUNT SIX
(Breach of Contract)

101.    Plaintiff incorporates by reference the allegations set forth in all the preceding Paragraphs as if set forth fully herein.

102.    Plaintiff and Defendants were parties to a valid, binding contract for the purchase and sale of a custom LRD.

103.    Plaintiff fully performed his obligations under the agreement, *viz.*, by paying $75,000, of which $42,500 was paid to Defendants.

104.    Defendants breached the agreement by failing to complete and deliver the custom LRD, selling the LRD to another party without notifying Plaintiff, and failing and refusing to return Plaintiff's $42,500.

105.    Defendants' breaches compelled Plaintiff to purchase the Replacement LRD.

106.    Due to the rarity of the specific model he sought, Plaintiff was forced to pay over $75,000 more for the Replacement LRD than the substantially identical LRD Plaintiff purchased at auction through SD but which Defendants failed to deliver and sold elsewhere.

107.    Additionally, due to Defendants' refusal to return Plaintiff's $42,500, Plaintiff was forced to finance the Replacement LRD, resulting in interest and finance charges that Plaintiff would have avoided had Defendants returned Plaintiff's $42,500 as promised.

108.    As a direct and proximate result of Defendants' material breaches, Plaintiff has suffered, and is continuing to suffer, damages.

## COUNT SEVEN
(Promissory Estoppel)

109.    Plaintiff incorporates by reference the allegations set forth in all the preceding Paragraphs as if set forth fully herein.

110.    Defendants clearly and definitely promised Plaintiff that Defendants would return Plaintiff's funds at the time Defendants agreed to terminate Plaintiff's agreement to purchase the LRD.

111.    Defendants intended that Plaintiff rely upon their promise to his detriment by delaying legal action and/or purchasing a vehicle elsewhere.

112.    Plaintiff reasonably relied on Defendants' promise by delaying legal action and purchasing the Replacement LRD from another party.

113.    Defendants failed to perform their promises.

114.    As a direct and proximate result of Plaintiff's reasonable reliance on Defendants' broken promises, Plaintiff has suffered, and continues to suffer, a definite and substantial detriment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Arete and Fargesen, jointly and severally, for compensatory damages; treble damages as provided by the New Jersey Consumer Fraud

16

Act, N.J.S.A. 56:8-19, and the Colorado civil theft statute, C.R.S. § 18-4-405; punitive damages;

prejudgment interest; costs; attorneys' fees; and any other relief deemed just and owing.

## DEMAND FOR JURY TRIAL

Plaintiff, through the undersigned counsel, demands a trial by jury as to all issues.

## CERTIFICATION (Local Civil Rule 11.2)

I certify that, to my knowledge, the matter in controversy is not the subject of any other

pending action, arbitration, or administrative proceeding.

ARSENEAULT & FASSETT, LLP
Attorneys for Plaintiff Adam Way

By: /s/ David W. Fassett

Dated: September 30, 2020